The question for determination is whether, subsequently to the making and execution of a will by a parent who has children living, in which will there is no specific provision for in after-born child, the latter may maintain an action in partition for its undivided interest in the real property of the testator, or whether such child is required to take its portion of the estate in money or the equivalent.
The following sections of the Ohio General Code are to be construed in disposing of the question:
Section 10563: "When, at the time of executing his will, a testator has a child absent and reported to be dead, or having a child at the time of executing the will, afterward has a child who is not provided for therein, the absent child, or child born after executing the will, shall take the same share of the estate, real and personal, that he would have been entitled to if the testator had died intestate."
Section 10564: "Toward raising the portion of *Page 371 
such child, the devisees and legatees shall equally contribute, in proportion to the value of what they respectively receive under the will, unless, in consequence of a specific devise or bequest, or of some other provisions in the will, a different apportionment among the devisees and legatees be found necessary, in order to give effect to the intention of the testator, as to that part of the estate which passes by the will. If such child, supposed to be dead at the time of executing the will, has a child or children, provision for whom is made by the testator, the other legatees and devisees shall not be required to contribute. The child, supposed to have been dead, shall take the provision made for his child or children, or such part of it as the circumstances of the case, in the opinion of a proper court may be just and equitable."
Section 10588: "All cases arising under this chapter, in which devisees or legatees are required to contribute to make up the share of a child born after the execution of the will, or of a child absent and reported to be dead, or of a witness to the will, or in which contribution is to be made among devisees, legatees, and heirs, or any of them, may be heard and determined in a single action."
A liberal construction should be given to these sections because they are remedial in their nature. Both in the civil law and at the common law, marriage and birth of issue subsequent to the making of a will, leaving such issue and widow unprovided for, constituted an implied revocation. The purpose of the legislation now under consideration is to correct the injustice which would result from establishing and carrying out strictly the *Page 372 
provisions of a testator's will, in which an after-born child is either purposely ignored or unintentionally overlooked, and this regardless of whether there had been a subsequent marriage. Whether the purpose of the legislation was to give effect to the presumed intention of a testator, or to prevent the chance of such child becoming a public charge, certainly it is founded in a most laudable purpose.
The cited cases from other states have been examined, but none is conclusive on the question, for the reason that the statutes of the several states from which the reports emanate and on which the decisions are based show wide variations in terminology. The decisions do, however, agree in holding to the idea that an after-born child does not and cannot take under the will, since, having been omitted from the will, the taking is in opposition thereto. It is entirely immaterial whether or not there was a formed intention to disinherit the after-born child; whatever may have been in the mind of the testator the effect of not providing for the child in the will is equivalent to a disinheritance. In such a posture, the statute comes into play, declaring, as to such child, the intestacy of the estate.
If so, upon what theory may it be said that such a child is to be given less consideration than if there had been no will? Upon what doctrine, differently from the heirs generally of an intestate, do its rights rest? To require such after-born child to be remitted to a fund to be raised by the devisees and legatees might place such earlier born children, coordinate in ownership as to the personalty and united in interest as tenants in *Page 373 
common in the real estate, in position so to handle the administration as to acquire title to the real estate through partition proceedings, or otherwise, at less than the real value. At least they would be able so to delay the sale of real estate as to permit a manipulation to their own advantage, accordingly as the market is lively or otherwise.
The construction we give to this legislation will place such a child in the homologous situation which the law contemplates; it will not be given a preferred position, nor, on the other hand, will it be subordinated to an inferior position.
Observe that the language of the statute (Section 10563) provides that the after-born child shall take the same share of the estate, real and personal, to which he would have been entitled if the testator had died intestate. This language is not of doubtful meaning. It does not provide that the child shall take a fractional part, the denominator of which equals the number of heirs, but says the child shall take the same
share that he would have received in event of no will. No violence is done to the letter of this language, and certainly none to the spirit, if it is held that the child steps in as tenant in common in the real estate.
We do not go so far as to hold, as did the Court of Appeals, that such child may have its election of participating in the real estate or taking entirely from the personalty. We follow what seems to be the plain provision of the statute, that such after-born child shall be put in the position it would have occupied had there been no will. The child, of course, by its own act after majority, or by appropriate proceedings prior thereto by its guardian, *Page 374 
may waive its position as regards tenancy in common, but this presupposes that it otherwise has been provided for. For instance, where all parties proceeded to a sale without knowledge of the existence of such child, the same might be held valid if a court of competent jurisdiction, on petition of the guardian, made such ward whole. The doctrine of estoppel is applicable to those who act through trustees, as well as to those who act on their own motion. Hence, while the judgment of the Court of Appeals is herein affirmed, what that court said with regard to the right of the infant's right of election is not to be accepted as the law.
It has been argued that the view now adopted will render General Code Section 10564 meaningless. We think otherwise. Suppose the statute known as General Code Section 10564 (and in this connection it may be said that General Code Section 10563, and General Code Section 10564, originally were part of the same section) had been omitted entirely, what would have been the course of administration of the estate? Would the birth of the after-born child have revoked the will in its entirety or only pro tanto? True, at common law, birth of issue, in the absence of other change in the circumstances, would not revoke a will. But another section of this chapter of the General Code, to wit, Section 10561, provides that where a testator has no child living at the time of the execution of the will, but afterward has a child living, or a posthumous child, such will shall be revoked entirely unless provision has been made for the after-born child, either by settlement or in some such way mentioned in the will as to overcome *Page 375 
a presumption of revocation. Note that this is not a revocation in part, but a revocation in its entirety. In view of this statute, General Code Section 10561, it might well be argued that, if there were no statute of the nature of Section 10564, Section 10563 should be similarly construed, and a revocation in the entirety result. So it follows that General Code Section 10564 has meaning because it makes plain that if a child be born into a family in which there were other children at the time of the execution of a will the revocation shall be protanto only.
Again, Section 10564, General Code, has meaning, because, except for it, how would the shares of the previously born children be Affected? Would they be affected equally, that is, per capita, or in proportion to the value of what they respectively are to receive under the will?
Much divergence of view regarding the effect of General Code Section 10564 seems to grow out of the word "contribute." To some it suggests a proceeding in the nature of an action in contribution. In our opinion it does not mean that; as used in this section it means a yielding up, a surrender, or a forfeiture. When so understood, it will harmonize not only with the rule herein declared, but also with other rules regarding the ownership of property and the devolution of real estate. And this is so even with General Code Section 10588 in effect, for it can well be understood that in the case of an after-born child questions might arise involving a specific bequest, or an annuity to an heir, with the proviso that no matter what debts arise or however much of a *Page 376 
falling off in value there may be of the estate the annuity is still to be paid in full. There is no reason why all such matters should not be settled in one action under the provisions of General Code Section 10588, and if the award to an after-born child, as a tenant in common, is not sufficient to give such child its full share of the estate, such other orders, under General Code Section 10588, may be made in the one action as will fully protect all parties. It may be said, in passing, regarding the remission of an after-born child to an action, or perhaps because of diversity of residenceship, to separate actions, against his older brothers and sisters, that judgment is not always followed by satisfaction thereof.
Then, too, there might be questions of advancements involved except for this statute. In the. case of Wilson v. Miller, 1 Pat. H., (Va.), 353, it was held that the doctrine of hotchpot did not apply, and children to whom advancements had been made could take their legacies without bringing in their advancements, the pretermitted child being entitled only to its share of the estate left at the time of the death of the testator. The Ohio rule is otherwise because of the statute.
Again we find a reason for Section 10564, General Code, because in providing for the children of a child supposedly dead, such supposedly dead child, if he reappear, takes the property given to his own children if the latter have been provided for in the will. In the absence of this section, if the supposedly dead child were to return and be permitted to have a share, and his own children also were allowed to take under the will, the injustice *Page 377 
justice of such double participation would be manifest.
It is claimed by plaintiff in error that inasmuch as this court, in the case of German Mutual Ins. Co. v. Lushey, 66 Ohio St. 233, used the following language at page 240 of the opinion (64 N.E. 120, 122), "The remainder of the section not quoted relates to the method of ascertaining and supplying to the after-born child his share of the estate," that case supports the position of plaintiff in error. It is not perceived how such contention may be made in view of the decision itself in that case.
The action was to foreclose a mortgage which had been executed and delivered by the supposedly sole devisee under a will. After the making and execution of the will, at which time the testator had but one child, another child was born. In the foreclosure suit the after-born child was made a party, asserted his interest in the real estate so mortgaged, and asked that his title be quieted as against the mortgagee. This court held in favor of the after-born child, and approved the action of the common pleas in quieting the title of the claimant to the one-half of the real estate so sought to be mortgaged. It is quite evident, therefore, that the quoted language in the Lushey case, supra, at page 240 (64 N.E. 122), relied upon by plaintiff in error, is merely a statement of fact that bequests and devises are subject to such modification as may be necessary to provide for a pretermitted child, and that by the statement referred to the court did not intend to declare the method of contribution. *Page 378 
Attention is called also to the case of McGarry v. Smith,22 Ohio St. 190.
The report of the case is meager, but an examination of the original papers shows there were two litigations. The first grew out of the fact that in 1857 the father executed a deed for his real estate to a son and daughter. Subsequently he executed a will devising the same real estate to the same son and daughter, except that the son was given a life estate with remainder over to another daughter. Afterwards the father again married and by his second wife had two children, Isaac and Mary. No provision for them was made in the will. The record fails to show any action on the part of the son and daughter, grantees in the deed, which would have released or reconveyed the title to the father, but doubtless the common pleas had sufficient evidence to conclude there had been a release, at least the will was held to be valid. The action by the guardian for the after-born children sought their share in money. The entry shows the court found each child was entitled to one-ninth of the real estate, and, while the record is not clear as to whether the property was sold, it is evident the question here was not before the court there, because, as stated, the guardian did not bring action as one in partition.
Another suggestion made to us is that our holding may undo or render fruitless the work of a parent, who, having a numerous family, some perhaps incapable of caring for themselves or unable suitably to take care of their property, has made and executed his will accordingly. Such considerations *Page 379 
are neither controlling nor persuasive. The disposition of property by will is purely statutory. The right to dispose of property by will did not exist under the common law. The statute under favor of which one makes a will is of no more force or effect than those statutes which limit one in the disposition of his property, for instance, the statute which declares inapplicable to wills the rule in Shelley's case, or which renders a bequest to a charitable trust void if the will be made within a year of the testator's death, certain conditions existing. The statute now under contemplation is in the nature of a limitation. One is not only presumed, but is required, to know not only the statute which permits him to make a will but those which limit his powers in that respect. A married man should draw his will with reference to the contingency of an after-born child. Surely one so born is not to be denied his birthright in favor of those older than himself, who presumably are the more able to take care of themselves, all because the parent was disinclined to change so important a document as his will. There was a time when the eldest male heir was a favorite in the law, but an enlightened people will have no such barbaric rule. The purpose of this statute being to give the newcomer his rightful share, no more, no less, and the construction we put on the statute being no departure from the language of the General Assembly, the fact that a parent by will has set up a scheme with which he himself is satisfied cannot conclude the courts in respect of the matter, especially when it is understood that the addition of a few words to *Page 380 
his final document would have disposed of the estate in accordance with law and natural justice.
If it be said that purchasers of property at judicial sale will suffer by reason of this judgment, it need only be said that purchasers at judicial sales ever must be mindful of the maxim caveat emptor, and that, after all, such purchasers are volunteers who are not required to buy. Furthermore, the number of such cases will be infinitesimally small.
On the whole case, it seems to us any construction of the law otherwise would require us to read into the statute something not there, the effect of which would be to take protection from those who most need it.
The judgment of the Court of Appeals is affirmed.
Judgment affirmed.
ROBINSON, DAY, and ALLEN, JJ., concur.
JONES, J., concurs in the syllabus and in the judgment.
MARSHALL, C.J., and MATTHIAS, J., dissent.